﻿Citation Nr: AXXXXXXXX
Decision Date: 01/29/21 Archive Date: 01/29/21

DOCKET NO. 190923-33342
DATE: January 29, 2021

ORDER

Service connection for cervical spine degenerative disc disease is denied.

Service connection for bilateral hearing loss is denied. 

Service connection for tinnitus is granted. 

An increased rating of 50 percent for migraine headaches with syncope is granted.

An increased rating of 40 percent for lumbosacral strain is granted.

A separate noncompensable rating for erectile dysfunction is granted.

An increased rating of 20 percent for right lower extremity radiculopathy is granted.

An increased rating of 20 percent for left lower extremity radiculopathy is granted.

Entitlement to special monthly compensation (SMC) based on loss of use of a creative organ is granted.

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is denied.

FINDINGS OF FACT

1. The Veteran’s cervical spine degenerative disc disease is not secondary to service-connected lumbosacral strain and is not otherwise related to an in-service injury or disease.

2. The preponderance of the evidence of record is against finding that the Veteran has had hearing loss for VA purposes at any time during or approximate to the pendency of the claim.

3. The Veteran’s tinnitus is related to his in-service noise exposure.

4. Throughout the period on appeal, the Veteran has experienced migraines with very frequent completely prostrating and prolonged attacks capable of producing severe economic inadaptability.

5. The Veteran’s lumbosacral strain is manifest by forward flexion limited to 16 degrees.

6. The Veteran’s lumbosacral strain has resulted in erectile dysfunction.

7. The Veteran’s right lower extremity sciatic nerve radiculopathy is manifest by no more than moderate incomplete paralysis.

8. The Veteran’s left lower extremity sciatic nerve radiculopathy is manifest by no more than moderate incomplete paralysis.

9. The Veteran’s loss of use of a creative organ is due to his service-connected lumbosacral strain.

10. The Veteran’s service-connected disabilities do not preclude substantially gainful employment.

CONCLUSIONS OF LAW

1. The criteria for service connection for cervical spine degenerative disc disease due to service or service-connected lumbosacral strain are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310.

2. The criteria for service connection for hearing loss are not met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

3. The criteria for service connection for tinnitus are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

4. The criteria for a disability rating of 50 percent for headaches are met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8100. 

5. The criteria for a rating of 40 percent for lumbosacral strain, but no higher, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5242-5243.

6. The criteria for a separate noncompensable rating for erectile dysfunction have been met. 38 U.S.C. §§ 1155, 5107, 38 C.F.R. §§ 4.1, 4.7, 4.115a, 4.115b, Diagnostic Code 7522. 

7. The criteria for a disability rating of 20 percent, but not higher, for right lower extremity radiculopathy have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8520.

8. The criteria for a disability rating of 20 percent, but not higher, for left lower extremity radiculopathy have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8520.

9. The criteria for SMC based on loss of use of a creative organ have been met. 38 U.S.C. §§ 1114 (k), 5107; 38 C.F.R. §§ 3.102, 3.350(a).

10. The criteria for entitlement to TDIU have not been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from August 1990 to April 1994.

In his September 2019 VA Form 10182 the Veteran elected the Evidence Submission docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction’s (AOJ) July 2019 rating decision, as well as any evidence submitted by the Veteran or his representative with, or within 90 days from receipt of, the VA Form 10182. 38 C.F.R. § 20.303.

The July 2019 rating decision found that new and relevant evidence had been received to readjudicate the claims of service connection for bilateral hearing loss and tinnitus. This is a favorable finding by the agency of original jurisdiction (AOJ), and the Board will proceed to the address the claim on the merits. See 38 U.S.C. § 5104A; 38 C.F.R. § 3.104(c).

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the United States Court of Appeals for Veterans’ Claims held, in substance, that every claim for a higher disability rating includes a claim for TDIU where a veteran asserts that his service-connected disability prevents him from working. In this case, the Veteran reported that he is unable to work due to back pain during a May 2019 VA examination. Accordingly, the Board has characterized the issues on appeal to include a claim of entitlement to TDIU.

Finally, evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the claims on appeal, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Service Connection 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

1. Cervical Spine Degenerative Disc Disease

The Veteran asserts that his cervical spine degenerative disc disease is secondary to his service-connected lumbosacral strain or was caused by an in-service injury. 

In the July 2019 rating decision, the AOJ found the Veteran has a diagnosis of cervical spine degenerative disc disease. The question for the Board is therefore whether the Veteran’s current disability is proximately due to or the result of or is aggravated beyond its natural progress by service-connected disability or is related to an in-service injury. 

Considering secondary service connection first, the Board concludes that while the Veteran has cervical spine degenerative disc disease, the preponderance of the evidence is against finding that the disability is proximately due to or the result of, or aggravated beyond its natural progression by his service-connected lumbosacral strain. 38 U.S.C. §§ 1110, 1131; Allen v. Brown, 7 Vet. App. 439 (1995) (en banc); 38 C.F.R. § 3.310(a). 

The May 2019 VA examiner opined that the Veteran’s cervical spine disability is more likely due to the natural progression of aging, citing medical literature as the basis of the opinion. The examiner explained that the neck and lumbar spine are two different locations of the spine, and the lumbar spine is lower and would not cause a weight burden on the neck to cause the diagnosed cervical spine degenerative disc disease. The examiner further explained that the Veteran had developed neck pain over the previous few years and the pain was insidious at onset. 

The Board notes that the May 2019 VA examiner did not give an opinion related to direct service connection. However, at the time of the rating decision on appeal, the Veteran had only asserted secondary service connection. The Veteran first asserted that his cervical spine disability was related to an in-service injury during the September 2019 private examination with Dr. J.E. The Board therefore finds that the May 2019 VA examiner’s opinion is adequate as it addressed the Veteran’s only asserted theory of service connection at the time of the examination. 

The Veteran believes his cervical spine disability is proximately due to or the result of or was aggravated beyond its natural progression by his service-connected lumbosacral strain, but he has not been shown to be competent to provide a nexus opinion regarding this issue. The issue is medically complex, as it requires knowledge of the anatomical relationship between the lumbar spine and cervical spine, and the record does not show that he has the skills or medical training necessary to make such a determination. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); see also Kahana v. Shinseki, 24. Vet. App. 428 (2011). 

Turning next to direct service connection, during the September 2019 private examination, the Veteran reported that he had experienced pain in his neck after lifting and dropping a large railroad tie in service; there is no date associated with the asserted injury. Based on the Veteran’s report, Dr. J.E. opined that the Veteran suffered an acute, severe strain of the cervical spine but continued to work, thus restraining the cervical spine and causing increased pain and pressure on the discs of the cervical spine, ultimately resulting in osteophyte formation and degenerative arthritis in the cervical spine.

While Dr. J.E. opined that the Veteran’s disability is at least as likely as not related to an in-service injury, the opinion is not probative because the preponderance of the evidence weighs against finding that the underlying in-service neck injury occurred. Reonal v. Brown, 5 Vet. App. 458, 460-61 (1993). 

The Veteran is competent to report that he suffered neck pain after lifting a railroad tie while on active duty, but his report is largely not credible due to internal inconsistency and inconsistency with other evidence in the record. Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006). 

The Veteran did not describe an injury related to picking up a railroad tie until the September 2019 private examination. Prior to that, the Veteran made differing assertions as to the origin of his current cervical pain. In a March 1993 service treatment record, the Veteran complained of neck pain, but the pain was associated with migraine headaches and there is no report of strain due to lifting. No other service treatment records documenting neck pain or a neck injury are of record. Then, in a February 1999 VA treatment record, the Veteran reported neck pain beginning in 1993 after a fall on his neck. But there is no in-service report of a fall injuring the Veteran’s neck and, again, no complaints in his service treatment records of neck pain, outside of that associated with migraine headaches. The medical evidence is then silent for any complaints or treatment of neck pain until 2018. In an April 2018 VA treatment record, the Veteran reported the sudden onset of neck pain the prior November that was not associated with trauma, and he stated that prior to that had only experienced mild, transient pain with a short duration. The Veteran reiterated this contention in VA treatment records dated in July 2018, December 2018, and May 2019, as well as during the May 2019 VA examination. 

While the Veteran contends his cervical spine disability is related to an in-service injury, the Board reiterates that the preponderance of the evidence weighs against findings that any in-service injury neck injury occurred. 

Upon careful review and weighing of the evidence, with reasoning as detailed above, the Board finds that the preponderance of the evidence is against the claim for service connection for cervical spine degenerative joint disease and the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001). The appeal must therefore be denied.

2. Bilateral Hearing Loss

The Veteran contends he suffers from bilateral hearing loss related to in-service noise exposure. 

The AOJ found the Veteran was exposed to military noise in-service. The AOJ additionally included in the favorable findings that a March 2019 private examiner had given the Veteran a diagnosis of hearing loss and provided a positive nexus opinion. 

However, although the July 2019 rating decision included a favorable finding that the Veteran had a diagnosis of hearing loss, the Board finds that the finding was a clear and unmistakable error. Clear and unmistakable error is the kind of error of fact or of law that, when called to the attention of later reviewers, compels the conclusion, with which reasonable minds could not differ, that the result would have been manifestly different but for the error. Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993). It is not mere misinterpretation of facts. Oppenheimer v. Derwinski, 1 Vet. App. 370, 372 (1991). As discussed below, the AOJ’s finding was a clear and unmistakable error of law.

For VA purposes, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz (Hz) is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, 4000 are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

A May 2014 VA examiner found the Veteran had normal hearing bilaterally, including 100 percent word recognition. 

The Veteran submitted the results of a private medical examination conducted in March 2019 by J.D. MS CCC-A, a licensed audiologist, who reported the Veteran had mild notched high frequency hearing loss bilaterally that was related to his military noise exposure. However, the audiogram documenting the results of the objective hearing examination do not meet the diagnostic requirements for hearing loss for VA purposes. The audiogram shows that the Veteran did not have an auditory threshold of 40 decibels or greater in any of the frequencies 500, 1000, 2000, 3000, 4000 Hz; did not have auditory thresholds in of 26 decibels or greater for at least three of the frequencies 500, 1000, 2000, 3000, 4000 Hz; and his speech recognition scores for the Maryland CNC Test were 100 percent bilaterally. 

There are no other auditory findings in the record showing that the Veteran’s hearing loss met the requirements of hearing loss for VA purposes as set out in 38 C.F.R. § 3.385. The AOJ’s favorable finding of a diagnosis of hearing loss was therefore clearly and unmistakably an error of law, and the Board is not bound by it. 38 C.F.R. § 20.801(a). 

Instead, the Board concludes that the Veteran does not have hearing loss for VA purposes and has not at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

While the Veteran believes he has hearing loss for VA purposes, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence. 

Upon careful review and weighing of the evidence, with reasoning as detailed above, the Board finds that the preponderance of the evidence is against the claim for service connection for hearing loss and the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001). The appeal must therefore be denied.

3. Tinnitus

The Veteran contends that he is entitled to service connection for tinnitus, which he asserts began in service and resulted from in-service noise exposure.

The Board concludes that the Veteran has a current diagnosis of tinnitus that is related to his in-service noise exposure. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303 (a).

The AOJ found the Veteran was exposed to military noise. The Board will not disturb these favorable findings.

The Veteran is competent to describe symptoms observable to his senses, such as ringing in his ears, and as such, he is competent to diagnose tinnitus. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Charles v. Principi, 16 Vet. App. 370, 374 (2003). Further, he is competent to report the onset and continuity of his current symptomatology as tinnitus is capable of lay observation. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). Affording the Veteran the benefit of the doubt, the Board finds that he is credible with respect to this contention.

The May 2014 VA examiner opined that the Veteran’s tinnitus was less likely than not related to his military noise exposure, explaining that there was no evidence in the Veteran’s service medical records consistent with acoustic trauma. However, as noted above, the AOJ found that the Veteran was exposed to military noise. 

On the other hand, in the March 2019 private opinion, J.D. opined that the Veteran’s tinnitus was related to the Veteran’s use of paint chippers while on active duty service. 

Upon review of the record, the Board finds the evidence to at least be in equipoise as to whether the Veteran’s current tinnitus arose in service. Accordingly, after resolving all doubt in favor of the Veteran, the Board finds that service connection for tinnitus is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

Increased Ratings

A disability rating is determined by the application of VA’s Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as “staged ratings,” whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

1. Migraine Headaches

The Veteran contends that he is entitled to a rating higher than 30 percent for migraine headaches.

Migraine headaches are rated pursuant to 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8100, for migraine. Under DC 8100, a noncompensable rating is warranted for migraines with less frequent attacks. A 10 percent rating is warranted for migraines with characteristic prostrating attacks averaging one in 2 months over the last several months. A 30 percent rating is warranted for migraines with characteristic prostrating attacks occurring on an average once a month over the last several months. A 50 percent rating is warranted for migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. A 50 percent rating is the highest schedular rating under DC 8100.

The rating criteria of DC 8100 are considered successive, meaning that a claimant cannot fulfill the criteria of the higher rating without fulfilling those of the next lower rating. Johnson v. Wilkie, 30 Vet. App. 245, 252 (2018). This renders 38 C.F.R. §§ 4.7 and 4.21 inapplicable. Johnson, 30 Vet. App. at 252.

The phrase “characteristic prostrating attacks” is used in the criteria corresponding to 10 percent and 30 percent ratings under DC 8100 to describe the nature and severity of migraines, but it is not defined in the regulation. Pursuant to Dorland’s Illustrated Medical Dictionary 1531 (32d ed. 2012), prostration is defined as “extreme exhaustion or powerlessness.” Thus, the phrase “characteristic prostrating attacks” is understood to describe migraine attacks that typically produce extreme exhaustion or powerlessness.

The rating criteria for a 50 percent rating contain several undefined phrases. The descriptive phrase “very frequent” connotes a frequency at least greater than once a month, as is required by the rating criteria corresponding to a lesser 30 percent rating. Johnson, 30 Vet. App. at 253. The phrase “completely prostrating” generally means that the migraines attack must render the veteran entirely powerless. Id. The completely prostrating attacks must also be “prolonged,” which is defined as “to lengthen in time: extend duration: draw out: continue, protract.” Id. (internal citation omitted). Lastly, the 50 percent rating criteria requires that the very frequent completely prostrating and prolonged attacks be “productive of severe economic inadaptability.” Productive can be read as having either the meaning of “producing” or “capable of producing,” and, with regard to severe economic inadaptability, nothing in DC 8100 requires that the claimant be completely unable to work in order to qualify for a 50 percent rating. Pierce v. Principi, 18 Vet. App. 440, 445-46 (2004).

The Board concludes that the Veteran has had migraines with very frequent completely prostrating and prolonged attacks capable of producing severe economic inadaptability, corresponding to the criteria for a 50 percent rating under DC 8100. 

During a May 2019 VA examination, the Veteran reported constant head pain and asserted that during a migraine he experienced nausea, vomiting, sensitivity to light, and sensitivity to sound. Despite the reported symptoms, the examiner determined the Veteran did not experience characteristic prostrating attacks. In a September 2019 evaluation, Dr. J.E. documented the same symptoms and additionally noted the Veteran had passed out due to his headaches.

The Veteran is competent and credible to report what he feels, such as the frequency and severity of headache-related pain. Accordingly, the Board finds his statements are credible as to the matter of frequency and severity of his migraines. See Layno v. Brown, 6 Vet. App. 465, 469 (1994); 38 C.F.R. § 3.159 (a)(2).

Regarding severity, the Board finds the Veteran’s attacks are completely prostrating and prolonged. The evidence demonstrates that during a migraine, the Veteran experiences sensitivity to light and sound, nausea, vomiting, and, on at least one occasion, has passed out. Both the VA examiner and Dr. J.E. documented near constant headaches, which the Board finds constitutes prolonged duration.  Likewise, the Board finds that a constant headache constitutes migraines that occur very frequently. 

Finally, because the Veteran’s headaches are very frequent, completely prostrating, and prolonged, and considering the combination of symptoms, the Board finds they are capable of causing severe economic inadaptability.

In sum, the Board finds the Veteran’s migraine symptoms more nearly correspond with the 50 percent disability rating for very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability for the entire period on appeal.

As 50 percent is the highest rating for migraines under DC 8100, this grant represents a complete grant of this appeal. 38 C.F.R. § 4.124a.

2. Lumbosacral Strain

The Veteran contends that he is entitled to rating in excess of 20 percent for his service-connected lumbosacral strain. 

The Veteran’s lumbosacral strain is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5242-5243. Under the General Rating Formula for Diseases and Injuries of the Spine, a 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine. 

Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately under an appropriate diagnostic code. Id. at Note 1. 

Unfavorable ankylosis is defined as “a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching.” Id. at Note 5. Additionally, fixation of a spinal segment in neutral position (zero degrees) is “always” considered favorable ankylosis. Id. [Include any other relevant Note(s).]

When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a criteria.”).

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however, 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011).

The Veteran underwent a VA examination in May 2019. The Veteran reported he was experiencing a flare-up at the time of the examination. The examiner found the Veteran had 30 degrees of forward flexion and 15 degrees of extension; however, the examiner also opined the measurements were not valid for rating purposes. In a June 2019 addendum, the examiner reported that the Veteran had shown no objective pain during range of motion measurement and had undertaken several movements that required more than 30 degrees of motion, including bending to take off and put on his shoes and moving from a chair to the examination table with no assistance and no unbearable pain. As such, the Board finds the measurements provided by the examiner are inadequate. 

However, Dr. J.E. examined the Veteran in September 2019 and found that the Veteran was experiencing a marked restriction of motion, measuring only 16 degrees of forward flexion and 0 degrees of extension. 

Given that the May 2019 VA examiner’s range of motion measurements are inadequate, the Board must rely on Dr. J.E.’s September 2019 range of motion measurements. Therefore, because the Veteran has forward flexion of less than 30 degrees of forward flexion the Board finds that a 40 percent disability rating is warranted for the Veteran’s service-connected lumbosacral strain. 

But the Veteran has not asserted, and the medical evidence does not demonstrate, symptoms more nearly approximating unfavorable ankylosis of the entire thoracolumbar spine. He has retained some degree flexion and none of the additional symptoms set forth in Note 5 are present. Although Dr. J.E. found the Veteran’s lumbsacral strain has resulted in some neurological symptoms, discussed below, he opined that these are the result of nerve impingement, not nerve root stretching, as described in Note 5. 

Consideration has also been given to assigning a rating under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes. However, the evidence of record is against a finding that the Veteran was ever prescribed bed rest by a physician for a duration that meets the criteria for a higher rating. See 38 C.F.R. § 4.71a, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. The May 2019 VA examiner reported a diagnosis of IVDS but found that the Veteran had not any incapacitating episodes. The medical evidence is otherwise silent for any incapacitating episodes. 

Regarding neurological impairment, Dr. L.E. opined that the Veteran’s lumbosacral strain resulted bladder dysfunction resulting in difficulty urinating and starting a stream and an inability to achieve an erection. Note 1 following the General Rating Formula specifies that any associated objective neurologic abnormalities including but not limited to bowel or bladder impairment are to be separately evaluated under an appropriate diagnostic code. See 38 C.F.R. § 4.71a, Diagnostic Codes 5242, Note 1. 

The bladder dysfunction described by Dr. L.E. is most analogous to obstructed voiding with obstructive symptomatology, in this case hesitancy and slow or weak stream. However, without evidence demonstrating marked obstructive symptomatology with any one, or a combination of, post void residuals greater than 150 cc, uroflowmetry; markedly diminished peak flow rate (less than 10 cc/sec), recurrent urinary tract infections secondary to obstruction, or stricture disease requiring periodic dilatation every 2 to 3 months, the Board cannot assign an additional separate compensable evaluation for bladder dysfunction. See 38 C.F.R. §§ 4.114a, 4.114b, Ratings of the Genitourinary System Dysfunction, Diagnostic Code 7517.

But the Board finds a separate noncompensable rating is warranted for erectile dysfunction based on the opinion of Dr. L.E., as a noncompensable rating entitles the Veteran to SMC based on the loss of use of a creative organ, as discussed below. See 38 C.F.R. § 4.114b, Ratings of the Genitourinary System Dysfunction, Diagnostic Code 7522.

In sum, for the foregoing reasons, a 40 percent for lumbosacral strain, but no higher is warranted, and a separate, non-compensable rating for erectile dysfunction is also warranted. 

3. Bilateral Lower Extremity Radiculopathy

Paralysis of the sciatic nerve is evaluated in accordance with the criteria set forth in 38 C.F.R. § 4.124a, Diagnostic Code 8520. (Neuritis and neuralgia of that group are evaluated under Diagnostic Codes 8620 and 8720.). Under these criteria, mild incomplete paralysis is rated as 10 percent disabling. Moderate incomplete paralysis is rated as 20 percent disabling. Moderately severe incomplete paralysis is rated as 40 percent disabling. Severe incomplete paralysis, with marked muscular atrophy is rated as 60 percent disabling. Complete paralysis, with the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost is rated as 80 percent disabling. 38 C.F.R. § 4.124a. 

The words “mild,” “moderate,” and “severe” as used in the various Diagnostic Codes are not defined in the Rating Schedule. Regulations provide that ratings for peripheral neurological disorders are to be assigned based the relative impairment of motor function, trophic changes, or sensory disturbance. 38 C.F.R. § 4.120. Consideration is also given for loss of reflexes, pain, and muscle atrophy. See 38 C.F.R. §§ 4.123, 4.124.

The term “incomplete paralysis” indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating is for the mild, or at most, the moderate degree. The disability ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. 38 C.F.R. § 4.124a, Note at “Diseases of the Peripheral Nerves.” The Note to 38 C.F.R. § 4.124a establishes a maximum disability rating for conditions that are wholly sensory, as opposed to a minimum disability rating for conditions that are more than wholly sensory. See Miller v. Shulkin, 28 Vet. App. 376 (2017). 

The maximum rating which may be assigned for neuritis not characterized by organic changes will be moderately severe incomplete paralysis for sciatic nerve involvement. See 38 C.F.R. § 4.123. 

Neither the Veteran’s treatment records, nor the May 2019 VA examination report include any descriptions of impaired motor function or muscle atrophy. In the September 2019 private examination report, Dr. J.E. described weakness in the Veteran’s feet, but did not report the level of weakness or describe any associated difficulty with ambulation or atrophy. 

Regarding sensory disturbance, during the May 2019 VA examination the Veteran reported moderate paresthesias/dysesthesias and numbness, but the examiner reported objective testing showed normal sensation. In the September 2019 private examination, Dr. J.E. reported decreased sensation, but did not describe the level of severity.

Regarding loss of reflexes, the objective examination during the May 2019 VA examination showed hypoactive ankle reflexes and normal knee reflexes, whereas Dr. J.E. reported the Veteran’s reflexes were absent. 

During the May 2019 VA examination, the Veteran described his pain as moderate constant pain. 

There is no description of trophic changes or complete paralysis in either the medical or lay evidence.

Based on the above, the Board finds that the disability is primarily manifest by sensory disturbance, loss of reflexes, and pain. The Board also finds that the most probative evidence of record is against a finding that the disability is manifest by impairment of motor functions, trophic changes, muscle atrophy, or complete paralysis. Given the Veteran’s subjective descriptions of his pain and sensory disturbances as moderate during the May 2019 VA examination, the Board finds that the level of impairment is most analogous to moderate incomplete paralysis.

The Board has considered all other potentially applicable Diagnostic Codes, but there is no evidence showing the Veteran has neurological impairment associated with any other peripheral nerves that have not already been service-connected. Therefore, a separate or higher rating under a different Diagnostic Code is not warranted. 

In conclusion, the Board finds that the preponderance of the evidence weighs in favor of granting an increased 20 percent rating for both his left and right lower extremity sciatic nerve radiculopathy, but no higher. 

4. SMC Based on Loss of Use of a Creative Organ

SMC is payable at a specified rate if the Veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of one or more creative organs. 38 U.S.C. § 1114(k); 38 C.F.R. § 3.350(a)(1).

As noted above, in the September 2019 opinion, Dr. J.E. opined that the Veteran is unable to achieve an erection due to nerve impingement caused by his service-connected lumbosacral strain. Thus, the medical evidence shows that the Veteran’s erectile dysfunction is a result of the Veteran’s service-connected lumbosacral strain.

Accordingly, the Board finds that the criteria for entitlement to SMC based on loss of use of a creative organ are met. 38 U.S.C. § 1114; 38 C.F.R. §§ 3.350(a)(1).

5. TDIU

The Veteran has asserted that he is unable to work due to his service-connected lumbosacral strain. See May 2019 VA Examination Report. 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation due to service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16. A finding of total disability is appropriate "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. §§ 3.340 (a)(1), 4.15.

Specifically, if there is only one such disability, this disability shall be ratable at 60 percent or more; if there are two or more disabilities, there shall be at least one disability that is ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a).

"Substantially gainful employment" is that employment "which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides." Moore v. Derwinski, 1 Vet. App. 356, 358 (1991). "Marginal employment shall not be considered substantially gainful employment." 38 C.F.R. § 4.16 (a) (2017).

The United States Court of Appeals for Veterans Claims (Court), in Ray v. Wilkie, 31 Vet. App. 58 (2019), interpreted the phrase "unable to secure and follow a substantially gainful occupation" under 38 C.F.R. § 4.16(b). The Court defined the term to have two components: one economic and one noneconomic. The economic component means an occupation earning more than marginal income (outside of a protected environment) as determined by the U.S. Department of Commerce as the poverty threshold for one person. The non-economic component, which is pertinent in this case, includes consideration of: The Veteran's history, education, skill, and training; whether the veteran has the physical ability to perform the type of activities required by the occupation at issue; and whether the veteran has the mental ability to perform the activities required by the occupation at issue.

During a May 2019 VA examination the Veteran reported that he had not worked since 2015 due to back pain. He stated that his work since the military included both office work and manufacturing work. The examiner did not offer an objective opinion as to whether the Veteran’s lumbosacral strain would preclude employment, and instead reiterated the Veteran’s report that he could not work due to his back disability. 

As of this decision, the Veteran has met the schedular criteria for the entire rating period. See 38 C.F.R. § 4.16(a). But the Board must still consider whether his service-connected back disability has precluded him from securing and following substantially gainful employment for that period. See 38 C.F.R. §§ 3.341, 4.16(a); see also Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

Given the extent of the physical limitations resulting from his back disability as discussed above, the Board acknowledges that the Veteran would be precluded from physically demanding work, such as the manufacturing work described by the Veteran. However, the Veteran also stated he had experience working in an office setting but gave no indication how his back pain or reports of giving out have resulted in an inability to return to work in an office setting. Apart from the Veteran’s statements, his medical treatment records related to the appeal period do not otherwise suggest his back disability would prevent employment in an office environment.

Therefore, the objective evidence of record does not support a finding that the Veteran's service-connected lumbsacral strain, when considered along with his occupational history, prevent him from securing or following any type of substantially gainful employment. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not applicable, and the appeal must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).

 

 

DONNIE R. HACHEY

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Mine

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.